UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

REBECCA SUE COTTRELL,

                                  Plaintiff,                  Case # 17-CV-6893-FPG

v.                                                                     DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

**INTRODUCTION**

Plaintiff Rebecca Sue Cottrell brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 14, 16. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

**BACKGROUND**

On January 6, 2015, Cottrell protectively applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[1] 762-74. She alleged disability since June 30, 2013 due to back and shoulder pain, borderline diabetes, ulcers, a fatty liver, anxiety, depression, and social phobia. Tr. 791-92. On November 18, 2016, Cottrell and a vocational expert ("VE") testified at a video hearing before Administrative Law Judge Rosanne M. Dummer ("the ALJ"). Tr. 43-74. On

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

1

December 27, 2016, the ALJ issued a decision finding that Cottrell was not disabled. Tr. 19-38. On October 31, 2017, the Appeals Council denied Cottrell's request for review. Tr. 1-7. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*Id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See Id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.     The ALJ's Decision**

The ALJ analyzed Cottrell's claim for benefits under the process described above. At step one, the ALJ found that Cottrell had not engaged in substantial gainful activity since the alleged onset date. Tr. 21. At step two, the ALJ found that Cottrell has the following severe impairments: status post 2010 left shoulder arthroscopy with tendinopathy and 2010 left knee arthroscopy; status post March 2015 right shoulder arthroscopy; obesity; and depressive and anxiety disorders. Tr. 22. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 22-24.

Next, the ALJ determined that Cottrell retains the RFC to perform light work[2] with additional limitations. Tr. 24-35. Specifically, the ALJ found that Cottrell can lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk for six hours total in an eight-hour workday; occasionally climb, balance, stoop, kneel, crouch, crawl, and reach overhead; and frequently (but not continuously or repetitively) push and pull bilaterally.[3] Tr. 24.

At step four, the ALJ found that Cottrell cannot perform her past relevant work. Tr. 36. At step five, the ALJ relied on the VE's testimony and found that Cottrell can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 36-37. Specifically, the VE testified that Cottrell can work as a router,

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[3] Cottrell's RFC determination also included several mental limitations; however, the Court focuses its opinion on Cottrell's physical limitations because she argues only that the ALJ's physical RFC findings lack substantial evidence.

merchandise marker, mail clerk, photocopying machine operator, routing clerk, and inserting machine tender. *Id.* Accordingly, the ALJ concluded that Cottrell was not disabled. Tr. 37-38.

**II. Analysis**

Cottrell argues that remand is required because the physical RFC determination is not supported by substantial evidence. ECF No. 14-1 at 24-28; ECF No. 17. Specifically, Cottrell asserts that the ALJ rejected the opinions of treating physician James Fennelly, M.D. and consultative examiner Harbinder Toor, M.D. and relied on her own lay opinion to determine Cottrell's ability to stand, walk, push, pull, and reach. *Id.*

A claimant's RFC reflects what he or she "can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). To determine a claimant's RFC, "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)); *see also* 20 C.F.R. § 416.945(a). The ALJ assesses RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The RFC determination does not have to "perfectly correspond" with any of the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order). The Court upholds an RFC finding "when there is substantial evidence in the record to support each requirement listed in the regulations." *Desmond*, 2012 WL 6648625, at *5 (citation omitted).

Cottrell asserts that the ALJ relied on her lay opinion to formulate the RFC because she "rejected" Drs. Fennelly and Toor's opinions. ECF No. 14-1 at 24. She also asserts that, because the ALJ rejected those opinions, she had to provide a function-by-function assessment of Cottrell's work-related capacity. *Id.* at 26-27. The Court disagrees.

Contrary to Cottrell's assertion, the ALJ did not wholly reject Drs. Fennelly and Toor's opinions; instead, she afforded them "partial" and "some" weight and, as discussed in greater detail below, relied on portions of them to determine Cottrell's RFC. Tr. 31-33. Just because the ALJ did not afford either opinion controlling weight does not mean that she substituted her own view of the medical evidence for those opinions. *See Currie v. Comm'r of Soc. Sec.*, No. 17-CV-602(MAT), 2018 WL 5023606, at *3 (W.D.N.Y. Oct. 17, 2018) ("Simply because the ALJ afforded no single opinion controlling weight does not mean . . . that she substituted her own expertise of the medical proof for medical opinion."). Moreover, because the ALJ relied on those opinions and other record evidence to determine Cottrell's RFC, she was not required to perform a function-by-function assessment. *See Guttierez v. Berryhill*, 333 F. Supp. 3d 267, 272 (W.D.N.Y. 2018) ("When an ALJ does *not* rely on a medical opinion to formulate the RFC, she must provide a function-by-function analysis of [the claimant]'s work-related capacity." (quotation mark and citation omitted) (emphasis added)).

Thus, the Court finds that the ALJ did not rely on her lay opinion and, for the reasons that follow, that the ALJ's conclusions as to Cottrell's ability to stand, walk, push, pull, and reach are supported by substantial evidence.

### A. Standing and Walking

The ALJ found that Cottrell could stand and walk for six hours[4] total in an eight-hour workday. On April 13, 2015, Dr. Toor opined that Cottrell has moderate limitation in her ability to stand and walk. Tr. 985. It appears that the ALJ rejected this opinion; in affording "some weight" to Dr. Toor's assessment, she indicated that she relied on his opinion to determine that Cottrell could occasionally reach overhead and frequently push and pull. Tr. 31. She did not discuss Dr. Toor's opinion as to Cottrell's ability to stand and walk, but it is worth noting that moderate limitations in these areas do not necessarily render Cottrell disabled. In fact, "several courts have upheld an ALJ's decision that the claimant could perform light or sedentary work even when there is evidence that the claimant had moderate difficulties" in standing or walking. *Carroll v. Colvin*, No. 13-CV-456S, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014) (citations omitted); *see also Stacey v. Comm'r of Soc. Sec.*, No. 09-CV-0638 (DNH/VEB), 2011 WL 2357665, at *6 (N.D.N.Y. May 20, 2011) (the ALJ's determination that the claimant could walk and stand for six hours total in an eight-hour workday was "generally consistent" with the consultative examiner's assessment of moderate limitations in those areas).

On February 15 and June 18, 2015 and January 8, 2016, Dr. Fennelly opined that Cottrell has an unlimited ability to stand and walk, meaning that she could perform those activities for more than four hours. Tr. 1092, 1131, 1167. These opinions support the RFC determination that Cottrell can stand and walk for six hours total in an eight-hour workday.

On November 11, 2016, Dr. Fennelly opined that Cottrell can stand and walk about two hours total in an eight-hour workday. Tr. 1227. The ALJ gave this opinion "minimal weight" because it "appear[ed] to have been prepared solely in contemplation of litigation." Tr. 33. In

---

[4] Cottrell incorrectly asserts that the ALJ found she could do these activities for eight hours. ECF No. 14-1 at 25.

accordance with the regulatory factors for weighing medical opinions, the ALJ also discounted this opinion as inconsistent with Dr. Fennelly's own treatment notes and the overall record evidence, especially Cottrell's conservative treatment. *Id.*; *see* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4) (the ALJ will give more weight to an opinion that is supported by relevant evidence and consistent with the record as a whole).

In further support of her RFC determination, the ALJ acknowledged and discussed Cottrell's knee and foot pain, both of which could interfere with her ability to stand and walk. Tr. 28-31. The ALJ noted that Cottrell's providers did not recommend left knee surgery and that she engaged in only conservative treatment like physical therapy, flexibility and conditioning exercises, anti-inflammatory medications, weight loss, wearing supportive shoes, and knee injections. Tr. 28 (citing Tr. 1206-12). Although she continued to complain of left knee pain, an MRI revealed only "some bursitis" but no "internal derangement," and her doctor recommended that she avoid "provocative positions including deep knee bending and particularly kneeling," but did not limit her ability to stand or walk. Tr. 28 (citing Tr. 1211).

As for Cottrell's foot pain, the ALJ noted that she reported pain in July of 2016 but continued to work two jobs. Tr. 29 (citing Tr. 1220). Examination revealed a normal gait, no gross deformity in the foot, and only some tenderness to palpation. *Id.* An x-ray suggested minimal early midfoot arthritis but was otherwise unremarkable with no acute findings. *Id.* Cottrell's doctor told her to avoid flat-soled footwear but did not tell her to avoid standing or walking. *Id.*

The ALJ also discussed Cottrell's daily activities and specifically noted that Cottrell "reported increased walking as she could walk with her granddaughter about double the distance she used to." Tr. 30 (citing Tr. 945, which also notes that Cottrell has "no limitation" in standing

and only "mild limitation" in walking). The ALJ pointed out that, although Cottrell alleged very limited physical abilities, including standing and walking, she "maintains rather normal activities," like working 20 hours per week, performing household chores, and regularly caring for her granddaughter. Tr. 31.

Accordingly, based on the evidence discussed above, the Court finds the ALJ's RFC determination as to standing and walking supported by substantial evidence.

### B. Pushing and Pulling

On February 6, 2015, Dr. Fennelly opined that Cottrell cannot push or pull. Tr. 1092. On April 13, 2015, Dr. Toor opined that Cottrell has moderate limitation in her ability to push and pull. Tr. 985. On January 8, 2016, Dr. Fennelly opined that Cottrell can push and pull with "some" limitations, meaning she could perform those activities for two to four hours. Tr. 1167.

The ALJ found that Cottrell could frequently push and pull bilaterally. Tr. 24 (citing Tr. 955-67, 1084-1201, 1203-22). "Frequently" means that Cottrell must push and pull one-third to two thirds of the workday, which is about two-and-a-half to five-and-a-half hours per day. *See* S.S.R. 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983). This determination is supported by Dr. Toor's assessment of moderate limitation in Cottrell's ability to push and pull and Dr. Fennelly's January 2016 assessment that Cottrell can do these activities for two to four hours. Moreover, the record does not reveal, and Cottrell does not point out, any evidence demonstrating that she cannot frequently push and pull.

Accordingly, based on the evidence discussed above, the Court finds the ALJ's RFC determination as to pushing and pulling supported by substantial evidence.

C.  **Reaching**

On April 13, 2015, Dr. Toor opined that Cottrell has moderate limitation in her ability to reach that is "more severe" in the right shoulder than in the left. Tr. 985. Dr. Fennelly did not assess any reaching limitations. Tr. 1228.

The ALJ found that Cottrell could occasionally reach overhead.[5] Tr. 24. "Occasionally" means that Cottrell must reach overhead "from very little up to one-third of the time," *i.e.* less than three hours total in an eight-hour workday. *See* S.S.R. 83-10, 1983 WL 31251, at *5. Although Dr. Toor did not define the term "moderate," it seems that limiting Cottrell to less than three hours of overhead reaching reasonably accounts for any issues she may have in this area.

Cottrell asserts, without citing any supporting medical evidence, that the ALJ should have explained how she determined that Cottrell was only limited with reaching overhead and not with reaching in other directions. ECF No. 14-1 at 25. The record, however, supports the ALJ's conclusion. Dr. Toor's examination notes reveal that Cottrell could not fully elevate her right or left arm. Tr. 984. Other record treatment notes contain similar findings and indicate that Cottrell had pain with range of motion and activity above shoulder height. *See, e.g.*, Tr. 926, 958, 959, 962, 1206. After Cottrell had right shoulder surgery in March of 2015, treatment notes indicate

---

[5] Cottrell asserts that the ALJ's errors in this case were not harmless in part because the Dictionary of Occupational Titles ("DOT") reveals that the jobs the VE identified require frequent reaching. ECF No. 14-1 at 27-28. The Commissioner interprets this as an argument that the ALJ did not adequately resolve the conflict between the VE's testimony and the DOT before she made her step five findings. ECF No. 16-1 at 11; *see, e.g.*, *Patti v. Colvin*, No. 13-CV-1123-JTC, 2015 WL 114046, at *6 (W.D.N.Y. Jan. 8, 2015) (citation omitted) (noting that it is the ALJ's duty "to identify and resolve any conflict between the [VE]'s testimony and the DOT before relying on such testimony"); *see also* S.S.R. 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).

Although Cottrell's brief does not seem to go this far, the Court agrees with the Commissioner that the ALJ did not err. The ALJ asked the VE whether his testimony was consistent with the DOT, and the VE testified that, although the DOT indicates that the jobs he provided require frequent reaching, his professional experience indicated that they only require occasional overhead reaching in accordance with the ALJ's hypothetical RFC determination. Tr. 71-72. The ALJ's decision acknowledged that the VE's testimony was inconsistent with the DOT and was instead based on his professional experience. Tr. 37. The Court finds that the hearing discussion and the language in the ALJ's decision fulfilled her duty to identify and resolve this conflict between the VE's testimony and the DOT.

that she was doing well and reported better range of motion and less pain. *See, e.g.*, Tr. 26, 30, 964, 970, 974, 1204. One note recommended that Cottrell finish her post-surgery physical therapy but indicated that she otherwise had "no restrictions" with respect to the right shoulder. Tr. 27, 30, 1204. The ALJ discussed Cottrell's left and right shoulder issues and treatment in her decision, and she specifically indicated that she was "mindful" of Cottrell's shoulder surgery when she made the RFC determination. Tr. 26, 27, 30.

Accordingly, based on the evidence discussed above, the Court finds the ALJ's RFC determination as to reaching supported by substantial evidence.

## CONCLUSION

For all of the reasons stated, the Court finds the ALJ's physical RFC determination supported by substantial evidence. Accordingly, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 15, 2019
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court